# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

-vs-  Case No. 6:11-cr-204-Orl-31DAB

**TRAVIS ROLLINS**

_____

## ORDER

This matter comes before the Court after an evidentiary hearing on the Motion to Suppress (Doc. 19) filed by the Defendant, Travis Rollins ("Rollins") and the response (Doc. 21) filed by the Government.

**I.     Factual Background**

On January 15, 2011, the Orange County Sheriff's Office deployed a tactical unit to the 6100 block of Terrell Road in Tangerine, Florida. Their mission was to accomplish a drug bust. The unit leader, Sgt. Scott Chehutski, who was undercover, was driving a van that had five uniformed deputies hidden in the back. A number of other deputies in marked vehicles had been dispatched to the area.

When the van pulled up in front of 6130 Terrell Road, Sgt. Chehutski was approached by a gentleman – later identified as Stanley Campbell – who offered to sell Chehutski some crack cocaine for $40. Chehutski gave the takedown signal, and the uniformed deputies poured out of the vehicle. Campbell ran a few yards, then dropped into a prone position in submission. Around this time, a nearby truck sped away from the scene. Campbell was then secured (*i.e.*, handcuffed) by Deputy Michael DeGraw.

Upon exiting the van, Deputy Elizabeth Collins surveyed the area. She saw the Defendant, Travis Rollins, on a front porch about 40 feet away.[1] Rollins was seated on the surface of the porch, with his feet on the steps leading up to it. Another vehicle was parked about 20 feet to the left of Rollins, with four individuals in or around it. Collins and Deputy Ricardo Santiago, who had also emerged from the van, made eye contact with Rollins and decided to secure (handcuff) him in order to question him. Both officers testified that, as they approached the porch where Rollins was seated, Rollins made furtive gestures with his right hand on his right side. Santiago and Collins were approaching Rollins from slightly to his left, meaning that they did not have a clear view of what he was doing on his right side. Collins testified that Rollins was making "a lot of movement" and was "messing with something" on his right side and that, at least at one point, Rollins was using both hands to do so.[2] She testified that the gestures made her think that Rollins was either attempting to discard something or was reaching for a weapon, making her concerned for their safety.

When the deputies reached the porch, they stood Rollins up and began to handcuff him. As they did so, a baggie was visible on the porch next to where he had been seated, two to three inches from where his right leg had been.[3] The baggie contained what appeared to be (and later turned out

---

[1]Santiago testified that Rollins was closer, approximately 20 or 30 feet away.

[2]Santiago's testimony was essentially consistent with Collins's testimony on this point, though less specific.

[3]Santiago testified that he noticed the baggie as he approached Rollins, before bringing him to his feet, but Collins testified that she noticed the baggie while helping bring Rollins to his feet. For purposes of resolving this motion, the Court will assume that the baggie did not become visible to either officer until Rollins was brought to his feet.

to be) crack cocaine.[4] The deputies searched Rollins, discovering a .45 caliber handgun in the right side of his waistband, near where he had allegedly made the furtive gesture, and 27 grams of powder cocaine in a plastic bag in his back left pocket. Rollins and several others were arrested at the scene. While under arrest, Rollins called a family member and made a number of inculpatory statements within earshot of Deputy Collins. Rollins was subsequently indicted on drug and weapons charges.

## II. Standards

The Fourth Amendment protects individuals from unreasonable searches and seizures. The "touchstone of the Fourth Amendment is reasonableness," as measured by an examination of the totality of circumstances. *Katz v. U.S.*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); see also, e.g., *United States v. Purcell*, 236 F.3d 1274, 1277-78 (11th Cir. 2001) (internal citations omitted). "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985).

Pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), law enforcement officers may briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity. *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993). *See also United States v. Dunn*, 345 F.3d 1285, 1289 (11th Cir. 2003) ("[M]inimally intrusive searches and seizures of the person are permissible when a law enforcement officer has an objectively reasonable suspicion

---

[4] Interestingly, the officers subsequently came to the conclusion that the crack was *not* Rollins's property, but had instead been thrown by Campbell (before his arrest) and had landed near Rollins. Collins testified that she and Santiago were unaware that Campbell had thrown anything and that they believed the crack was Rollins's until after he was placed under arrest.

that 'criminal activity may be afoot.'"). Similarly, a *Terry* stop is justified where the officer has reasonable grounds to believe that an individual is armed and dangerous. *Sibron v. New York*, 392 U.S. 40, 63, 88 S.Ct. 1889, 1903, 20 L.Ed. 2d 917 (1968).

**III. Analysis**

Rollins argues that the officers' *Terry* stop was unlawful and therefore the evidence against him that resulted from the stop – the gun, cocaine, and inculpatory statements – should be suppressed. He contends that the officers did not have an objectively reasonable, particularized suspicion that he had committed or was about to commit a crime when they walked up to him, handcuffed him, and searched him. (Doc. 19 at 3-4).

Mere proximity to others who are independently suspected of criminal activity does not, without more, provide grounds to search a person. *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) (although officers had warrant to search bar premises and bartender suspected of drug dealing, search of bar customers was unlawful). Based on the testimony at the hearing, the officers decided to conduct a *Terry* stop of Rollins solely on the grounds that he was seated a few dozen feet from where an aborted drug deal took place, in an area known for regular drug activity.[5] Without more, the search would have been unlawful under *Terry*.

But these officers had more. The officers testified that Rollins made furtive gestures in the area of his right side and waistband as they approached. Their testimony on this point was consistent and uncontradicted. And in determining whether a seizure was justified, the officers were permitted

---

[5]The Government also argues that the fact that a vehicle had just sped away and that other individuals were being arrested nearby somehow weighs in favor of the legality of a *Terry* stop of Rollins. The Court rejects this argument, however, as these other things do not suggest that Rollins himself had committed or was about to commit a crime.

to consider the fact that Rollins was located in an area known for drug dealing, 40 feet from where an (aborted) drug deal had just occurred. *United States v. Gordon*, 231 F.3d 750, 755-756 (11th Cir. 2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a *Terry* analysis.").

Under these circumstances the officers had a reasonable suspicion that Rollins had engaged in or was about to engage in criminal activity, or that he was armed and dangerous.[6] As such, they could lawfully conduct a *Terry* stop. The fact that they could not have had an objectively reasonable suspicion as they started to approach Rollins is of no moment, as Rollins's furtive gestures occurred prior to actual initiation of the *Terry* stop. Once the officers stood Rollins up to conduct the *Terry* stop, the baggie was visible, and that gave the officers probable cause to arrest Rollins.

---

[6]The Defendant cites *United States v. Thompson*, 712 F.2d 1356 (11th Cir. 1983) for the proposition that the conduct at issue in this case could not have given rise to a reasonable suspicion of criminal activity. In *Thompson*, the officer came upon an individual seated in a car in an airport parking lot with a light-colored circular object to his nose. *Id.* at 1358. The individual moved the object to his lap, screwed a lid on it, and, upon noticing the officer, moved it quickly to his side. *Id.* Although the officer did not suspect criminal activity, he seized the individual within the meaning of the Fourth Amendment. *Id.* at 1360. The *Thompson* court concluded that the facts known to the officer were insufficient to support a reasonable suspicion of criminal activity, and suppressed the evidence found in the subsequent search. *Id.* at 1361-62.
  *Thompson* does not control this case, however. Rollins was not found in a random public location, but in an area known for drug activity, a few dozen feet away from an (aborted) drug deal that had just taken place. Moreover, Rollins made a furtive gesture that was consistent with the notion that he was armed and trying to hide a weapon, providing grounds for a search more substantial than those present in *Thompson*.

## IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Suppress (Doc. 19) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on September 13, 2011.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Travis Rollins